BREWER ET AL. v. PORCH ET AL.

In Trespass. On motion for new trial.

In an action which survives the death of one of the defendants, it is not too late upon the return of the postea, by leave of the court to suggest, *nunc pro tunc*, the death of a defendant, which happened before the trial, even if there was an opportunity to make the suggestion before trial.

It is not competent for a party to prove the declarations of his own witness, in contradiction of his testimony under oath at the trial.

The minutes of the Circuit Court are not competent evidence to prove the fact of a former trial between the same parties. Either an examined copy of the record, properly authenticated, or the postea, at least, must be produced.

*Jeffers and Wall* for rule, &c.

*Browning and Williamson* contra.

DAYTON, J. This was an action of trespass tried at the March term, of the Gloucester Circuit, 1838, and a verdict had for the plaintiffs, for $700.

The declaration was in common form, and the pleas, not guilty and liberum tenementum.

The following reasons among others are relied upon for a new trial.

That there was a mis-trial, inasmuch as it appeared that one of the original defendants, Felix Fisler, died after issue joined, and before the term next preceding the trial, and yet no suggestion of his death was entered upon the minutes, until the coming in of the postea.

2. That the court admitted illegal evidence.

3. That the court erred in its charge to the jury.

4. That the verdict is against evidence and law.

It is my intention to consider these matters in their order.

As the error first assigned, involves merely a question of practice of a technical character, it may be disposed of briefly.

The leaning of courts at the present day is against unnecessary technicality: they never permit it to interfere with the merits, unless bound by precedent, or most weighty reasons. That the cause of action in the present case, survived against the defendants, cannot be denied ; and if so, our statute, *Rev. L.* 164, section 2, prevents an abatement of the suit, even if such had been

the effect at common law, (not however, meaning to intimate that it was so. See *Vin. A. title, abatement* 54; sec. 21, 26.) The only question, therefore, really is as to the time of entering a suggestion of the death. Must it necessarily be done before the trial where opportunity is afforded? Or may it, with the permission of the court, be done afterwards; as upon the coming in of the postea, as was done in this case? I have no doubt but the latter may be done, and the following authorities fully sustain the position. 2 *Arch. P.* 299; *Tidd's P.* 1028; *Bul. N. P.* 312; 1 *Burr.* 363; 1 *Salk.* 8; *Ld. Ray.* 1415; *T. Ray.* 463; 5 *T. R.* 577; *Barnes,* 469; 1 *Green,* 294.

I hold, therefore, that the entry made *nunc pro tunc*, at the term to which the postea was returned, with the permission of the court, is sufficient; and that the court consequently committed no error on this branch of the case.

2. The next error assigned is, that the court admitted illegal evidence. I shall notice only so much of the testimony excepted to, as I think tends to sustain the error assigned.

Both parties claim under Abraham Leonard, who was produced by the plaintiff, and examined as a witness. He testified that he had owned the property in dispute himself, and lived on it almost sixty years. That about 25 years before the trial, Edmund Brewer, the ancestor of the plaintiff, came upon the land and told him he had bought it at Sheriff's sale. That from that time he had considered Brewer as the owner—that he himself showed him the lines, and Brewer's hands thenceforth cut and hauled on the premises as occasion required, without complaint on his part. But he said further, that he, Leonard, continued to live on the property as he had done before—that he occupied it as *his own*—that it was assessed to him, and he paid all the taxes—that he paid no rent to Brewer and took no lease under him—that he did not consider himself as living under anybody. If this state of facts, proved by the plaintiff's main witness, were correct, it is evident that it would have been a serious question for the jury whether his possession was not adverse to the Brewer title. This might have destroyed the plaintiff's whole case, for the defendants had bought up the Leonard title, whatever it might be. To avoid this difficulty, the plaintiff called upon Samuel Leonard, the son of Abraham, who swore

positively that he had heard his father say that he was permitted by Brewer to live on the property, and that he " paid tax for the land by way of rent, as he always understood " from him. This evidence, though objected to, was admitted by the court. I think there can hardly be a doubt as to its illegality. It was not only very important, but entirely competent for the plaintiff to prove *the fact* that Abraham Leonard during his long continued occupation of the land, did pay taxes *by way of rent,* but they could not and did not prove the fact in this way. They merely impeached the truth or memory of their own witness, who denied it. The father said under oath, that it was not so. The son did not pretend to say it was so; he merely said he had *heard his father say* it was so. Now if this were intended as evidence of the fact of payment of rent (in which view alone it was competent) it was not only hearsay evidence, but hearsay evidence of the worst character. It was to prove a fact by showing what another man had said when not under oath, though in opposition to what he did say on the trial, when under oath. Had Abraham Leonard been the *defendants' witness,* and as such, testified that he paid no rent, &c., it would have changed the whole question. The plaintiff then could have shown that he had said otherwise, not only to impeach him, but to show how he did in point of fact hold. In that case, *Townsend* v. *Johnson, et al.* 2 *Penn.* 706, would apply. But the present presents the bald question, whether a party may make out his case by the declarations of his own witness, who is in court—under no disability and sworn in the cause. Argument cannot make plainer the illegality of this evidence.

The next item of evidence objected to, and admitted, was the introduction of the minutes of the Circuit Court to show there had formerly been a trial between the same parties. This was to legalize the evidence of John B. Harrison, Esq. who afterwards proved that one Sheriff Glover, since dead, had been examined as a witness on that trial, and testified as to his making sale of the lands in dispute, to Edmund Brewer on execution of his belief that he had made him a deed (which the plaintiff alleged was lost). The introduction of these minutes as well as the evidence of Mr. Harrison, was objected to, and the objection overruled. In this, I think there was error. In the first place

the entry there did not prove the alleged fact, that there had been a trial between the same parties. It was merely entitled *William Brewer and others* v. *Felix Fisler and others,* who these others were, did not appear. But the minutes of a court are never evidence for the above purpose. Either an examined copy of the record properly authenticated, or the postea, at least, must be produced. *Arch. Pl. and Ev.* 362; 2 *P. Wms.* 564; 5 *Esp.* 56; *Bul. N. P.* 242; *Ros. Ev.* 156 *and cases cited.* The same point moreover has been ruled in the court of appeals of this State.

Still if this were the only point of objection, I should hesitate about granting a new trial. The court in its charge told the jury that in its opinion, if the plaintiff's right to recover depended upon their belief of such a deed, they ought not to recover. That the evidence of such a deed, was quite too slender, and if they could find for the plaintiff on no other grounds, they might consider all that evidence about a deed as *over-ruled.* This direction would cover the evidence of Mrs. Brewer, the widow of Edmund Brewer, which was objected to, as well as all others applying to this branch of the case.

The counsel, on the argument, contended with some force, that the court had no right to refuse to over-rule evidence when called upon, and then put it to the jury with an adversary opinion, merely touching its weight. In this, the counsel was doubtless right. The evidence was either legal or illegal. If legal, its weight was for the consideration of the jury. If illegal, it ought not to have been put to the jury, or made the subject of comment by the court. Still, this application for a new trial, is to our discretion, and we cannot help seeing that if the jury pursued the instructions of the court, no harm was done. They were told if they could not find for the plaintiffs on other grounds than a belief of a deed, they might consider all evidence in relation thereto, as *over-ruled.* The presumption therefore is, that they did find on other grounds. It is true, some of the cases go so far as to say that the bare admission of illegal evidence, though it be afterwards over-ruled, may be a ground for a new trial; this means, I apprehend, where the case is itself doubtful, and there is reason to believe that the jury has been operated upon by illegal evidence, though the same were afterwards over-ruled. It is one of those matters which in the exercise of a proper discretion,

the court may in some cases consider, though the party cannot claim it as a legal right. I again repeat that if this objection stood alone and the verdict were in other respects satisfactory, I would hesitate about making this rule absolute.

Some additional evidence of an illegal character was admitted, as that the consideration of the deed from Abraham Leonard to Charles Wood and others, under which the defendants in part justified, had not been paid to Leonard, according to the agreement made at the time of the sale. There is nothing to justify this evidence—it was aside the issue, and though the court in its charge took off, perhaps effectually, its edge, yet it was not over-ruled.

3. The next error assigned is that the court erred in its *charge* to the jury. It would be almost matter of surprise if under this general assignment of error, some objectionable matter could not be found in the very thorough and elaborate charge delivered in this case. But upon careful consideration, I apprehend there is not much ; and what there is has originated in the hurry incident to a trial at the circuit. The court in one part of its charge said to the jury " if you are satisfied that the plaintiffs' father had the title of Abraham Leonard, by virtue of such Sheriff's deed, as has been asserted," or by 20 years' adverse possession, &c., then the plaintiffs may maintain their action, &c. and yet I apprehend the court did not mean to leave it an open question whether such deed had in fact been made, for as before said, the jury were instructed that the evidence of the existence of such a deed, was so slender that unless they could find for the plaintiff, on other grounds, they might consider all the evidence in relation to a deed, as over-ruled. And that it ought to have been over-ruled as illegal, I have already shown. That part of the charge therefore, above alluded to, called their attention to a false issue, and in this particular, was objectionable.

So too, the charge represents Abraham Leonard as having sworn that about the year 1800 or 1806, he yielded up the whole tract to Edmund Brewer, never afterwards exercised any acts of ownership—got his fire wood *by permission*—and though not recollecting any particular agreement—considered himself as having no title, and living *under Brewer*.

If this were so, the question of adverse possession was hardly

an open one, and there was scarcely a point left for the decision of the jury. But if the state of the case be correct, the witness not only did not say anything about his not recollecting any *particular agreement*, but he said he paid *no rent*—took *no lease*, and considered himself as *living under nobody*. This evidence was most important as connected with the question of adverse possession, and should have been left to the jury. With these exceptions which apply more to the statement of facts, than the law of the charge, it appears to me, that the complaints of the defendants' counsel, are without grounds.

4. It was lastly argued that admitting the admission of illegal evidence, &c., the verdict is sustained by other legal evidence and by law. But of this I do not feel so well assured, as I could wish, in a case where I would deny a re-hearing notwithstanding manifest and important illegalities upon the trial. We are not in such cases to look nicely into the weight of evidence; to assume the province of the jury; and after rejecting that held by us illegal, go into a careful estimate of the amount which remains, and then substitute our judgment upon the facts, in place of that of the jury. The legal principle, is intended to apply to plain cases; not to burthen this court with the investigation of complex questions of fact, peculiarly within the province of another tribunal.

In view of this whole case, I cannot help thinking, the purposes of justice will be best answered by a new trial.

FORD, and NEVIUS, Justices, concurred.

HORNBLOWER, C. J. I concur in setting aside the verdict and granting a new trial, not intending however, by such concurrence, to commit myself upon all the points, upon which my brethren have expressed opinions; especially so far as those opinions, affect the merits of the cause, and the ultimate rights of the parties. I am satisfied, several errors were committed at the Circuit: amongst others, the minutes of the court were improperly admitted, for the purpose of letting in evidence of what sheriff Glover, deceased, had sworn to on a former trial between the same parties for the same trespass. In order to legalize such evidence, the record of the former cause, ought to have been pro-

duced, since, by that only, could the court judicially know, the parties, the subject matter and the issue in that cause. I am further of opinion, that the Sheriff's docket, the evidence of Mrs. Brewer, and what was sworn to by John B. Harrison, Esq., ought to have been expressly overruled, before the cause was submitted to the jury. Becoming satisfied, while counsel were summing up, that the evidence had been improperly admitted, it was my intention, that the jury should understand me as over-ruling it, in my charge. But I can easily see, that the hypothetical manner, in which I expressed myself, may have misled the jury : and as it is not clear, that justice has been done, between the parties, I think a new trial ought to be granted.

One ground, however, was much pressed upon the argument, by the defendants' counsel, which in my opinion is not tenable. It came out in the progress of the trial, that one of the defendants had died since the last preceding Circuit, and prior to the term of this court which had last been holden ; so that the plaintiffs might have suggested the death of that defendant on the record, and brought down the cause for trial against the survivors. Upon this discovery being made, the counsel for the defendants, moved to arrest the trial, and discharge the jury. This, I refused to do ; but permitted the plaintiffs, if they chose to do so, to proceed at their peril ; subject to the opinion of this court, upon any proper motion to be made by either party, at bar, upon the return of the postea. Hence it has been insisted in the argument, that it was a mis-trial—that the jurors and witnesses were sworn in a cause that did not exist : and the case of *Rex* v. *Cohen*, 1 *Stark. R.* 511, was relied on as supporting the objection. It is true in that case, Lord Loughborough held that the witness could not be convicted of perjury ; because the suit in which he had been sworn as a witness, had abated before the trial ; and therefore it was not a trial in due course of law. Whether his Lordship was right or wrong in that decision, it is a sufficient answer, to say, that it was in an action of assumpsit ; and the deceased party was not a *defendant*, but one of the *plaintiffs* on record. In actions, *ex contractu*, at the common law, the death of a party at any time before judgment, abated the suit ; but not so in trespass. The marginal note, in 1 *Petersd. Abr.* 4, that in trespass, prior to 8 & 9 *W.* 3 *c.* 11, the death of one of several

defendants, before verdict, abated the suit, is manifestly wrong; the very cases there cited, prove the reverse.

In a case cited in 1 *Vin. Abr.* 54, in trespass against *four*, one died between the Nisi Prius, and day in Bank ; Markham, justice, said, the plaintiff might have judgment against *all :* for none could have error, (on that account) but the executor of the deceased, for the writ abates only as against him, and not against the others.    In this case, it is true, the death occurred after the verdict ; but in *Preston* v. *Mortlock, Sty.* 299, cited in *Vin. Abr. ut supra*, one of four defendants in trespass, died before the trial ; the jury found a verdict and assessed damages against *all :* upon a motion for judgment, Roll, C. J. said, that upon relinquishing damages as to the deceased defendant, the plaintiff could have judgment against the rest.    So too, in another case, cited in 1 *Vin. Abr.* 54, in trespass against *three*, one died ; *distringas jurat.* as against *all*, and verdict for plaintiff: motion in arrest of judgment, and that the writ should abate : *sed non allocatur*, for though ill, against the dead person, it was good against the others.

In 1 *Vin. Abr. tit. Abatement*, 53, *et seq.* will be found a number of cases, establishing the position, that in trespass, the suit was not abated at the common law, by the death of one of several defendants ; among others, there is a reference to the *Sheriff of Nottingham's case, Noy*, 77 ; *Harris* v. *Phillips et al. Hardr.* 161 ; and *Spencer et al.* v. *Rutland, Yelv.* 208.

In *Newnham* v. *Law*, 5 *T. R.* 577, one of two defendants died before interlocutory judgment ; but the suit went on to final judgment and execution against both.    Upon a motion to set aside the proceedings, Lord Kenyon said, " this objection should not have been taken by the defendant at all.    Plaintiff might have made the suggestion as a matter of course :" and he was permitted to make it then, and without costs.    Upon the precedents I have mentioned, and upon the authority of what was said by this court, in *Freeborn* v. *Denman*, 3 *Halst. R.* 116, and in *Allen et al.* adsm. *Craig*, 1 *Green's R.* 294, I am clearly of opinion, if there were no other objection to the verdict, the plaintiff would be at liberty as a matter of course, to make the suggestion now, of the death of one of the defendants, and take judgment

against the rest.   But for the reasons already assigned, the rule to show cause must be made absolute.

WHITE, J., had been counsel in the cause, and gave no opinion.

*Rule absolute*